CITY OF HEATH, OHIO, Plaintiff,

v.

ASHLAND OIL, INC., and Unocal, Corp., Defendants.

No. C–2–91–980.

United States District Court, S.D. Ohio, E.D.

July 19, 1993.

Randolph C. Wiseman, Bricker & Eckler, Columbus, OH, for plaintiff.

David W. Alexander, Squire, Sanders & Dempsey, Columbus, OH, for Ashland Oil, Inc.

Richard P. Fahey, Arter & Hadden, Columbus, OH, for Unocal, Corp.

### MEMORANDUM AND ORDER

HOLSCHUH, Chief Judge.

This matter is before the Court on the motion of defendant Ashland Oil, Inc. to dismiss counts 2, 3 and 4 for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and failure to state a claim pursuant to Rule 12(b)(6).

### BACKGROUND

This lawsuit was filed by plaintiff the City of Heath (Heath) under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9601, *et seq.*, the Resource Conservation Recovery Act (RCRA), 42 U.S.C. § 6901, *et seq.*, and various state laws. Count 2 seeks costs under CERCLA allegedly incurred by plaintiff due to the release of hazardous substances at a facility owned by defendant Ashland Oil, Inc. (Ashland) and previously owned by defendant Unocal Corp. Counts 3 and 4 seek civil penalties and injunctive relief under RCRA against defendants for operating a hazardous waste facility in violation of the standards applicable to generators of hazardous waste and for creating an imminent and substantial endangerment to the health of the citizens of Heath and the environment.

Plaintiff alleges that the facility located at 840 Heath Road, Heath, Ohio was originally used as an oil refinery and in the 1970s was converted to a storage and disposal facility for petroleum and petroleum distillates. Plaintiff alleges that defendants engaged in practices that resulted in the unlawful disposal of hazardous substances and wastes including vinyl acetate, bromodichloromethane, benzene, 1, 1, 2, 2–tetrachlorethane, chlorobenzene and zylenes. Plaintiff further alleges that the hazardous substances and wastes seeped into and polluted the ground, groundwater and aquifer and have migrated into the publicly owned treatment works (POTW). By stipulation entered June 30, 1993, plaintiff dismissed all claims for damages relating to the POTW, including the specific allegations in counts 6, 7, 8 and 9. Plaintiff alleges that it has incurred and will continue to incur substantial response costs.

On May 30, 1991 the State of Ohio filed an action in the Common Pleas Court of Licking County against Ashland and Unocal relating to the disposal of hazardous waste from the facility at 840 Heath Road, Heath, Ohio and resulting contamination of groundwater and surface water. *Ohio, ex rel Fisher v. Ashland Petroleum Company and Union Oil Company of California dba Unocal,* Case No. 91–F–90011. On that same day the parties, with the approval of the common pleas court, entered a consent order for a preliminary injunction requiring site investigation and remedial work in accordance with the National Contingency Plan. 40 C.F.R. Part 300.

### SURREPLY

In addition to the memoranda permitted under Local Rule 7.2(a), plaintiff has filed a motion for leave to file a surreply memoranda. Plaintiff requests that it be permitted to file a surreply containing more detailed information on the applicability of the Hazardous and Solid Waste Amendments (HSWA). Ashland has also filed a motion for leave to file a response to plaintiff's surreply.

Although plaintiff gives no reason why the more detailed information found in the surreply was not contained in the original response, the information provides the Court with additional helpful information on issues in dispute and the motion for leave is granted. Likewise, defendant's motion for leave to file a response to the surreply is granted. The Court will consider the surreply and response.

### ADDITIONAL AUTHORITY

Ashland has filed two motions for leave to file instanter additional authority on the basis that decisions issued after its briefs were filed are relevant to its motion to dismiss. The motions are granted and the Court will consider the opinions.

### LEGAL STANDARD

When a defendant seeks dismissal under both Rule 12(b)(1) and 12(b)(6), the Court is bound to consider the Rule 12(b)(1) motion first, because the Rule 12(b)(6) motion will become moot if the Court lacks subject matter jurisdiction. *Moir v. Greater Cleveland Regional Transit Authority*, 895 F.2d 266, 269 (6th Cir.1990). In reviewing a Rule 12(b)(1) motion, the plaintiff has the burden of proving jurisdiction to survive the motion and the Court has the power to resolve factual disputes. *Id., Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986). However, where the complaint seeks recovery directly under federal law the federal court must entertain the action unless the claim is immaterial or wholly insubstantial and frivolous. *Cherokee Exp. Inc. v. Cherokee Exp., Inc.*, 924 F.2d 603, 609 (6th Cir.1991) (citing *Bell v. Hood*, 327 U.S. 678, 681–682, 66 S.Ct. 773, 775–76, 90 L.Ed. 939 (1945)). "The fact that a complaint may not state a claim upon which relief may be granted is of no relevance to the question of subject matter jurisdiction." *Id.* The question of whether a complaint states a claim for relief calls for a decision on the merits, not for a determination of jurisdiction. *Id.*

Ashland argues that the complaint fails to state claims upon which relief may be granted in regard to counts 2, 3 and 4 and that counts 3 and 4 have jurisdictional defects. The Court will first establish, with reference to counts 3 and 4, whether the Court has subject matter jurisdiction over the claims in those counts. If so, the Court will consider whether the respective counts state claims upon which relief can be granted.

The purpose of a motion under Fed.R.Civ.P. 12(b)(6) is to test the sufficiency of the complaint. When considering a motion to dismiss pursuant to Rule 12(b)(6), a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 515, 92 S.Ct. 609, 614, 30 L.Ed.2d 642 (1972); *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir.1983); *Dunn v. Tennessee*, 697 F.2d 121, 125 (6th Cir.1982), *cert. denied*, 460 U.S. 1086, 103 S.Ct. 1778, 76 L.Ed.2d 349; *Smart v. Ellis Trucking Co.*, 580 F.2d 215, 218 n. 3 (6th Cir.1978), *cert. denied*, 440 U.S. 958, 99 S.Ct. 1497, 59 L.Ed.2d 770 (1979); *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir.1976). Although the Court must liberally construe the complaint in favor of the party opposing the motion to dismiss, *Kugler v. Helfant*, 421 U.S. 117, 125–26 n. 5, 95 S.Ct. 1524, 1531 n. 5, 44 L.Ed.2d 15 (1975); *Smart*, 580 F.2d at 218 n. 3; *Davis H. Elliot Co. v. Caribbean Utils. Co.*, 513 F.2d 1176, 1182 (6th Cir.1975); *Ott v. Midland–Ross Corp.*, 523 F.2d 1367, 1369 (6th Cir.1975), it will not accept conclusions of law or unwarranted inferences cast in the form of factual allegations. *Blackburn v. Fisk Univ.*, 443 F.2d 121, 124 (6th Cir.1971); *Sexton v. Barry*, 233 F.2d 220, 223 (6th Cir.), *cert. denied*, 352 U.S. 870, 77 S.Ct. 94, 1 L.Ed.2d 76 (1956). The Court will, however, indulge all reasonable inferences that might be drawn from the pleading. *Fitzke v. Shappell*, 468 F.2d 1072, 1076–77 n. 6 (6th Cir. 1972).

When determining the sufficiency of a complaint in the face of a motion to dismiss, a court will apply the principle that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). *See also McLain v. Real Estate Bd.*, 444 U.S. 232, 246, 100 S.Ct. 502, 511, 62 L.Ed.2d 441 (1980); *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir.1983), *cert. denied*, 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984). Because a motion under Rule 12(b)(6) is directed solely to the complaint itself, *Roth Steel Prods.*, 705 F.2d at

155; *Sims v. Mercy Hosp.*, 451 F.2d 171, 173 (6th Cir.1971), the focus is on whether the plaintiff is entitled to offer evidence to support the claims, rather than on whether the plaintiff will ultimately prevail. *Scheuer*, 416 U.S. at 236, 94 S.Ct. at 1686; *McDaniel v. Rhodes*, 512 F.Supp. 117, 120 (S.D.Ohio 1981).

■■■■ A complaint need not set down in detail all the particularities of a plaintiff's claim against a defendant. *United States v. School District*, 577 F.2d 1339, 1345 (6th Cir.1978); *Dunn*, 697 F.2d at 125; Westlake, 537 F.2d at 858. Rule 8(a)(2) Federal Rules of Civil Procedure, requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." The function of the complaint is to afford the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *See Dunn*, 697 F.2d at 125; *Westlake*, 537 F.2d at 858. The Court will grant a motion for dismissal under Rule 12(b)(6) only if there is an absence of law to support a claim of the type made or of facts sufficient to make a valid claim or if on the face of the complaint there is an insurmountable bar to relief indicating that the plaintiff does not have a claim. *See generally Rauch v. Day & Night Mfg.*, 576 F.2d 697, 702 (6th Cir.1978); *Ott*, 523 F.2d at 1369; *Brennan v. Rhodes*, 423 F.2d 706 (6th Cir. 1970).

### DISCUSSION

#### A. COUNT 2: 42 U.S.C. § 9607(a)(4)(A)

■■■■ Ashland argues that Heath has failed to state a claim on which relief can be granted under count 2. Ashland argues that CERCLA does not permit a municipality like the City of Heath to bring suit under 42 U.S.C. § 9607(a)(4)(A). Ashland argues that only the United States, a state or an Indian tribe can proceed under subdivision (A) of section 9607(a)(4) and that other persons must proceed under subdivision (B). Title 42 U.S.C. § 9607(a)(4)(A) and (B) provide:

> **(a) Covered persons; scope; recoverable costs and damages; interest rate; "comparable maturity" date**
>
> Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—
>
> . . . .
>
> (4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for—
>
> (A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;
>
> (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan;

A major difference between suits under subpart (A) and subpart (B) is that under subpart (B) a private party plaintiff must prove that the costs incurred were both necessary and consistent with the national contingency plan. In an action by the federal government or a state under subpart (A), the burden is on the defendant to prove that the costs incurred by the federal government or the state were inconsistent with the national contingency plan. *City of Philadelphia v. Stepan Chemical Co.*, 713 F.Supp. 1484, 1486–87 (E.D.Pa.1989).

Under CERCLA "[t]he term "person" means an individual, firm, corporation, association, partnership, consortium, joint venture, commercial entity, United States Government, State, municipality, commission, political subdivision of a State, or any interstate body." 42 U.S.C. § 9601(21).

> The terms "United States" and "State" include the several States of the United States, the District of Columbia, the Commonwealth of Puerto Rico, Guam, American Samoa, the United States Virgin Islands, the Commonwealth of the Northern Marianas, and any other territory or possession over which the United States has jurisdiction."

42 U.S.C. § 9601(27).

Ashland relies on two cases holding that political subdivisions of states have no au-

thority to proceed under section 9607(a)(4)(A) but rather must proceed under section 9607(a)(4)(B), *Town of Bedford v. Raytheon Co.*, 755 F.Supp. 469, 472–475 (D.Mass.1991) and *City of Philadelphia*, 713 F.Supp. at 1487–1490. Ashland argues that the two cases plaintiff relies on predate the Superfund Amendments and Reauthorization Act of 1986 (SARA) which undermines the reasoning of plaintiff's cases, as explained in *Town of Bedford*. Finally, Ashland argues it would be particularly inappropriate to allow Heath to proceed on behalf of the state in this case as the state itself is involved in ongoing litigation regarding the same conditions complained of in this case.

Heath responds that it may proceed under 42 U.S.C. § 9607(a)(4)(A) as a "state" and cites *Mayor and Bd. of Alderman v. Drew Chem. Corp.*, 621 F.Supp. 663 (D.N.J.1985), and *City of New York v. Exxon Corp.*, 633 F.Supp. 609, 619 (S.D.N.Y.1986). In *Drew* the court found that a town could proceed under subpart (A) as a "state" since the definition of a state used the term "include" which contemplates an expansive interpretation. 621 F.Supp. at 666. Looking at section 9607(a)(4)(C) which also uses the term state in defining who may sue to protect national resources, the court found it would be anomalous for the statute to allow states and not local governments to bring a cause of action for damages to natural resources when natural resources are defined as including resources owned by local governments. *Id.* However, recently the judge who wrote the opinion in *Drew* revisited the issue and "retreat[ed] from [his] earlier decision" by holding that a municipality is not a state for purposes of section 9607(a)(4)(C). *Borough of Rockaway v. Klockner & Klockner*, 811 F.Supp. 1039 (D.N.J.1993). In *Exxon*, also involving an action brought under section 9607(a)(4)(C), the court found that allowing a city to proceed furthered the Act's broad remedial purpose of protecting natural resources under the control of local governments. 633 F.Supp. at 619.

The above position was rejected in *Town of Bedford* which found that a plain reading of the definition of state would indicate that municipalities are not intended to be included, as all the entities listed in the definition are sovereigns not dependent on states to grant them power. 755 F.Supp. at 471. However, in light of the case law cited above, the court in *Town of Bedford* presented a detailed analysis rejecting the holdings in *Drew* and *Exxon.* While the court agreed that CERCLA is a broad remedial statute, it found that the statute clearly distinguishes between states and others bringing suits, as illustrated by SARA. *Id.* at 472. SARA permits states to designate natural resource trustees who may act on behalf of the state, therefore allowing a state to authorize a municipality to bring suit on its behalf. *Id.* Municipalities are not granted similar authority. *Id.* Relying on the language and structure of CERCLA, the court concluded that a municipality may not proceed under section 9607(a)(4)(A). *Id.* at 474–75. This same conclusion was reached in *City of Philadelphia* which specifically rejected the reasoning of the court in *Drew.* 713 F.Supp. at 1488. The court cited the Sixth Circuit case of *Ohio Manufacturer's Ass'n v. City of Akron*, 801 F.2d 824 (6th Cir.1986), *cert. denied and appeal dismissed*, 484 U.S. 801, 108 S.Ct. 44, 98 L.Ed.2d 9 (1987), which rejected the argument that the use of the word "includes" in defining state required an expansive reading of the word state to include a political subdivision. *Id.* The court also noted that numerous other sections of CERCLA specifically refer to municipalities and local government units, suggesting that the omission of municipalities from the definition of state was no accident. *Id.* at 1489.

The court is persuaded by the reasoning of the more recent cases of *Town of Bedford* and *City of Philadelphia* which hold that a municipality is not permitted to proceed under 42 U.S.C. § 9607(a)(4)(A). Municipality is specifically included in the definition of "person" and is not found in the definition of "state." Further, although the definition of state uses the word "include," none of the entities named are local government units. Accordingly, the Court finds that the City of Heath is not a "state" for purposes of 42 U.S.C. § 9607(a)(4)(A) and therefore is not able to bring a suit under subpart (A). Accordingly, the motion to dismiss count 2 is granted.

## B. COUNT 3: 42 U.S.C. § 6972(a)(1)(A)

### 1. Ohio's Hazardous Waste Laws

In count 3 plaintiff asserts a citizen suit under 42 U.S.C. § 6972(a)(1)(A) based on violations of 42 U.S.C. § 6922 regarding standards applicable to generators of hazardous waste, 42 U.S.C. § 6924 regarding standards applicable to owners and operators of hazardous waste treatment, storage and disposal facilities, and 42 U.S.C. § 6925 regarding permits. All the cited sections are found in subchapter III of RCRA dealing with Hazardous Waste Management.

Ashland argues that plaintiff has failed to allege any violation of federal law because Ohio's hazardous waste laws apply in lieu of federal law. Specifically Ashland argues that Ohio's hazardous waste program codified at Ohio Administrative Code chapters 3745–50 through 3745–69 has been authorized by U.S. EPA to apply within the state in lieu of the federal program pursuant to 42 U.S.C. § 6926(b). Without an alleged violation of federal law, Ashland argues that plaintiff's citizen suit claim fails for lack of subject matter jurisdiction.

Plaintiff agrees that Ohio received authorization to carry out its own hazardous waste program effective June 30, 1989. However, plaintiff argues that although Ohio's program operates in lieu of RCRA, Ohio's program has not received authorization to operate in lieu of the entire 1984 Hazardous and Solid Waste Amendments (HSWA), citing 54 Fed. Reg. 27173. Plaintiff argues to the extent its claims come within HSWA provisions not covered by the Ohio hazardous waste program its claims arise under federal law. In plaintiff's surreply, plaintiff lists forty-eight regulations implementing HSWA and enacted pursuant to the statutory provisions on which count 3 is based which plaintiff argues are still enforceable in Ohio as the state has not received authorization to implement its own plan in these areas. Plaintiff also argues that several alleged violations predate the authorization of the Ohio program and therefore are cognizable under federal law. Finally, plaintiff argues that citizen suits may be brought even if there exists a state authorized plan citing *Lutz v. Chromatex, Inc.*, 725 F.Supp. 258, 261 (N.D.Pa.1989).

Title 42, U.S.C. § 6972(a)(1)(A) provides:

**Citizens suits**

**(a) In general**

Except as provided in subsection (b) or (c) of this section, any person may commence a civil action on his own behalf—

(1)(A) against any person (including (a) the United States, and (b) any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to this chapter.

The courts addressing whether a citizen suit is available in an authorized state have come to conflicting results. Several courts have held that citizen suits under subsection A are not available in authorized states because the state program supersedes the RCRA provisions required for a citizen suit under subsection (A). *Dague v. City of Burlington*, 935 F.2d 1343, 1353 (2d Cir.1991); *Williamsburgh-Around-the-Bridge Block Association v. Jorling*, 30 Env't Rep.Cas. (BNA) 1188, 1989 WL 98631 (D.N.Y.1989); *Thompson v. Thomas*, 680 F.Supp. 1, 3 (D.D.C.1987). The court in *Dague* cited to *Williamsburgh* and *Thompson* in holding that a citizen suit was not available as the authorized state program superseded subchapter III of RCRA. *Id.* The court in *Williamsburgh* looked at the language of the statute and the code of federal regulations and determined that states were intended to carry the main enforcement burden once their program was found to be equivalent to the federal program. 30 Env't Rep.Cas. (BNA) at 1192. The court concluded based on the extensive statutory scheme that in authorized states a plaintiff's cause of action arises under state law or alternatively a plaintiff may seek revocation of the state's authorization. *Id.* at 1195. Similarly in *Thompson* the court dismissed the citizen suit, stating that the alleged violation of subchapter III which had been superseded by state law should be brought in state court under state law. 680 F.Supp. at 3.

Other courts have held that a RCRA citizen suit is available in a state that has received authorization to implement its own hazardous waste program. *Sierra Club v. Chemical Handling Corp.*, 778 F.Supp. 25, 26 (D.Col.1991); *Sierra Club v. United States Dep't of Energy*, 734 F.Supp. 946 (D.Col. 1990); *Lutz*, 725 F.Supp. at 261. The best argument for allowing citizen suits in authorized states was articulated by the *Lutz* court which relied on EPA comments in the Federal Register indicating EPA's belief that citizen suits are available regardless of whether or not a state program is authorized. 725 F.Supp. at 261. The court further noted that arguably a state authorized program was effective pursuant to RCRA as RCRA provides for the authorization of state programs. *Id.* In an earlier case the *Lutz* court had held that a citizen suit was not available in an authorized state to enforce RCRA provisions superseded by state law but took no position on whether a citizen suit was available to enforce the state program. *Lutz v. Chromatex, Inc.*, 718 F.Supp. 413, 426 (M.D.Pa.1989). The court in *Chemical Handling Corp.* relied on *United States v. Conservation Chemical Co.*, 660 F.Supp. 1236 (N.D.Ind.1987), which did not involve a citizen suit but rather involved an independent enforcement action by the EPA administrator and authorized by 42 U.S.C. § 6928(a). 778 F.Supp. at 26. Title 42, section 6928(a) specifically provides that the Administrator can bring a suit in an authorized state provided notice is given. The fact that the EPA's enforcement authority is expressly reserved in authorized states by section 42 U.S.C. § 6928(a)(1) and no such reservation is found in connection with RCRA's citizen suit provision could support the argument that citizen suits are not available in authorized states. The court in *Sierra Club v. U.S. Dept. of Energy* did not specifically address the issue before this court, but noted that the provisions of RCRA in question were implemented largely by state regulations. 734 F.Supp. at 947.

■ From the above cases the Court determines that a citizen suit is not available in an authorized state for an alleged violation of a federal provision superseded by state law pursuant to 42 U.S.C. § 6926(b). Additionally, there is a clear position among several courts that an RCRA citizen suit is not available to enforce a state authorized program. However, the Court need not address this issue, as Heath has not alleged a violation of any state regulation authorized pursuant to 42 U.S.C. § 6926(b), rather Heath has argued there are federal provisions still in effect in Ohio on which its claims are based. Therefore, the Court will proceed to consider the parties arguments concerning the existence of federal hazardous waste regulations still in effect in Ohio and on which Heath bases its claims.

An examination of the Federal Regulations establishes that on June 28, 1989 notice was given that Ohio's hazardous waste management program was authorized to operate in lieu of the federal program subject to the limitations imposed by HSWA. 54 F.R. 27170. HSWA provides that federal EPA is to implement the HSWA requirements until the state is granted authorization to do so, resulting in a dual state/federal regulatory program in Ohio until Ohio is authorized to implement all HSWA requirements. Since that date Ohio has received additional authorization for revisions to the state hazardous waste program, some of which deal with HSWA requirements. So, while Ohio is an authorized state, there are still some provisions of HSWA in effect in Ohio.

■ Plaintiff's surreply contains a list of HSWA provisions that it alleges the state program does not cover. However, Ashland argues that Heath's failure to identify any specific regulation which Ashland is violating is fatal to its claim. Further, Ashland points out that the majority of the regulations are clearly inapplicable to this dispute, such as those which have expired and those dealing with unrelated matters such as electric arc furnaces and wood preserving.

■ Only three of the regulations still in effect appear to possibly relate to the facts of this case. Item 10, 55 Fed.Reg. 46354, item 12, 55 Fed.Reg. 51707, and item 20, Fed.Reg. 21955, deal with Petroleum Refinery Primary and Secondary Oil/Water/Solids Separation Sludge (listings F037 and F038). Item 10 adds two new wastes to the list of hazardous wastes and items 12 and 20 are corrections

and clarifications to item 10. Although these Federal Regulations do relate to petroleum refineries, it is not clear that they are implicated by the complaint in this case and, in fact, the plaintiff has not alleged that they are. On a motion to dismiss for lack of subject matter jurisdiction, the plaintiff has the burden of establishing jurisdiction. The Court does not find that plaintiff has met that burden at this point. Plaintiff's failure to cite to any specific federal regulation alleged to be violated by Ashland results in this Court being without federal question jurisdiction.

Plaintiff also argues that many of the alleged violations predate the authorization of Ohio's hazardous waste provisions, and the claims are therefore cognizable under RCRA. Ashland responds that a citizen suit requires a present violation, and that wholly past violations are not actionable.

■ The citizen suit provision of RCRA has been interpreted to be forwarding-looking, requiring allegations of either present or future harm. *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1159 (9th Cir. 1989); *Lutz v. Chromatex, Inc.*, 718 F.Supp. 413, 424 (M.D.Pa.1989); *McClellan Ecological Seepage v. Wernberger*, 707 F.Supp. 1182, 1187 (E.D.Cal.1988). This interpretation is based on the Supreme Court's conclusion that the citizen suit provision found in the Clean Water Act, which is almost identical to the RCRA citizen suit provision, addresses only conduct alleged to be continuous or intermittent. *Gwalthey of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987). In fact, the Supreme Court specifically identified the citizen suit provision of RCRA as one of several environmental statutes that authorize only prospective relief. *Id.* at 57 n. 2, 108 S.Ct. at 380 n. 2. Therefore, when a complaint alleges only past harm, the court is found to be without jurisdiction and dismissal is appropriate. *Ascon*, 866 F.2d at 1159. In this case the plaintiff is arguing that past harm, that is conduct prior to 1989, can serve the basis of federal jurisdiction. However, as RCRA's citizen suit provision requires present or future harm, allegations of past

harm cannot create federal jurisdiction under RCRA.

Based on the above, the Court finds that Heath has not established that this Court has subject matter jurisdiction over count 3. However, the Court will proceed to consider Ashland's further argument that count 3 is barred by virtue of the action brought by the state of Ohio against the defendants in the Common Pleas Court of Licking County, Ohio.

### 2. *State Litigation*

■ Ashland argues that the consent order entered into by Ohio and the defendants in the state action addressing the identical issues as those addressed by count 3 bars Heath's action pursuant to 42 U.S.C. § 6972(b)(1)(B). Heath responds that 42 U.S.C. § 6972(b)(1)(B) requires diligence by the state and that diligence requires a finding of fact and, therefore, is not appropriate on a motion to dismiss. 42 U.S.C. § 6972(b)(1) provides:

(1) No action may be commenced under subsection (a)(1)(A) of this section—

(A) prior to 60 days after the plaintiff has given notice of the violation to—

(i) the Administrator;

(ii) the State in which the alleged violation occurs; and

(iii) to any alleged violator of such permit, standard, regulation, condition, requirement, prohibition, or order,

except that such action may be brought immediately after such notification in the case of an action under this section respecting a violation of subchapter III of this chapter; or

(B) if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States or a State to require compliance with such permit, standard, regulation, condition, requirement, prohibition, or order.

In any action under subsection (a)(1)(A) of this section in a court of the United States, any person may intervene as a matter of right.

The Sixth Circuit has determined that the prohibition against a citizen suit unless the notice provision required by section 6972(b)(1)(A) has been complied with is a "jurisdictional prerequisite" to bringing a citizen suit and must be sufficiently alleged. *Walls v. Waste Resources Corp.*, 761 F.2d 311, 316–17 (6th Cir.1985). By the same rationale the prohibition against a citizen suit based on state action found in the same subsection could be viewed as a jurisdictional prerequisite which must be sufficiently alleged, *i.e.*, that the present action is not barred by any action brought by the Administrator or the state. However, the district court in *McGregor v. Industrial Excess Landfill, Inc.*, considered a motion to dismiss based on prior state action under Rule 12(b)(6). 709 F.Supp. 1401; 1407 (N.D. Ohio 1987), *aff'd*, 856 F.2d 39 (6th Cir.1988). In affirming the district court's dismissal, the Sixth Circuit did not reach this issue, finding subject matter jurisdiction lacking for failure to allege the required notice. This Court will consider the effect of state action under Rule 12(b)(6) as done by the *McGregor* court. In this case the complaint contains no allegations regarding any state action. The Court, however, may also consider the record in the state court proceeding and the statute under which the claim is brought.[1]

Ashland argues that under section 6972(b)(1)(B) Ohio's preexisting independent litigation regarding the same issues bars count 3. Ashland cites to various cases dismissing suits due to pending state litigation or consent decrees. *Dedham Water Company v. Cumberland Farms Dairy, Inc.*, 889 F.2d 1146, 1157 (1st Cir.1989); *McGregor v. Industrial Excess Landfill, Inc.*, 709 F.Supp. 1401, 1407 (N.D. Ohio 1987), *aff'd*, 856 F.2d 39 (6th Cir.1988). Ashland argues that the dismissal of count 3 would implement Congress' intent that the EPA take primary responsibility for the investigation of alleged hazardous waste sites and would promote settlements between private parties and the EPA.

Heath argues that 42 U.S.C. § 6972(b)(1)(B) requires not only that the state commence prosecution but that the state be diligent in its prosecution. Relying on *Tanglewood East Homeowners v. Charles–Thomas, Inc.*, 849 F.2d 1568 (5th Cir.1988), Heath argues that diligence is a question of fact that cannot be decided on a motion to dismiss. Heath argues that the fact that the complaint and the consent order were filed on the same day demonstrates that there is no litigation being diligently pursued in this matter.

It is true that the complaint and consent degree were both filed on the same day. However, this does not change the binding nature of the consent order entered by the Court. The consent order requires the defendants, Ashland and Unocal, to perform subsurface site investigations to determine the need for further investigation and remedial work in accordance with EPA guidelines and approved by the Ohio EPA. Among the other requirements imposed upon defendants by the consent order is the submission of monthly progress reports to Ohio EPA containing site activity, percentage of completion and other information specified in the order, as well as the obligation upon both defendants and Ohio EPA to make all raw data, reports and results available to the other side. In addition to the costs associated with the above work, defendants must reimburse Ohio EPA for all costs incurred in monitoring performance under the consent order. The order states that the work to be performed is to be the first step to resolve the injunctive relief sought in the complaint and will operate as a stay of the litigation pending further order of the Court.

This is not a case in which the state has simply commenced an action and the history of the action raises a legitimate question as to whether in fact it is being diligently prose-

---

1. Heath argues under its discussion of count 3 that Ashland's submission of the record in the state court proceeding on a 12(b) motion is inappropriate because a 12(b) motion is addressed to the face of the complaint. However, federal courts may take judicial notice of proceedings in other courts. *Rodic v. Thistledown Racing Club,* *Inc.*, 615 F.2d 736, 738 (6th Cir.), *cert. denied,* 449 U.S. 996, 101 S.Ct. 535, 66 L.Ed.2d 294 (1980); *Scarso v. Cuyahoga County Dept. of Human Services*, 747 F.Supp. 381, 382 (N.D. Ohio 1989), *aff'd in part and remanded in part*, 917 F.2d 1305 (6th Cir.1990).

cuted by the state. Instead, it is a case in which the prosecution of the state action has resulted in a detailed twenty page consent order setting out the work to be performed by defendants and the standards to which the work must comply, monitored by the state and subject to Court intervention if not complied with. The pace of prosecution is not a subjective question; it is established by the court record and embodied in the court's order. Recognizing the diligence of the state prosecution in a case in which the state and the defendants have entered into a detailed and legally binding consent order requiring them to incur substantial costs associated with investigation and remedial work furthers RCRA's goal of giving the state primary responsibility for remedying environmental hazards and avoiding conflicting litigation and obligations.

Accordingly, the Court determines that count 3 is barred by the consent order entered into in the state litigation pursuant to 42 U.S.C. § 6972(b)(1)(B) and must be dismissed.

### 3. *Notice, Civil Penalties*

Because the Court has determined that it is without jurisdiction over count 3 and additionally that count 3 is barred by the state action, it need not address the arguments relating to the notice requirement and whether civil penalties are available. However, similar arguments arise in the context of count 4 which will be discussed in the following section.

### C. *COUNT 4: 42 U.S.C. § 6972(a)(1)(B)*

#### 1. *State Litigation*

■■■ Ashland argues that the ongoing work related to the consent order entered into by Ohio and the defendants in the state action addressing the identical issues as those addressed by count 4 also bars Heath's claim under Count 4 pursuant to 42 U.S.C. § 6972(b)(2)(C). Heath responds that 42 U.S.C. § 6972(b)(2)(C) requires diligence by the state and that diligence requires a finding of fact and, therefore, is not appropriate on a motion to dismiss. Both parties rely largely on their arguments relating to count 3.[2]

As explained in regard to count 3, the Court will consider the effect of state action under Rule 12(b)(6) and will consider the record in the state court action.

Title 42 section 6972(b)(2)(C) provides:

No action may be commenced under subsection (a)(1)(B) of this section if the State, in order to restrain or abate acts or conditions which may have contributed or are contributing to the activities which may present the alleged endangerment—

(i) has commenced and is diligently prosecuting an action under subsection (a)(1)(B) of this section;

(ii) is actually engaging in a removal action under section 104 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 [42 U.S.C.A. § 9604]; or

(iii) has incurred costs to initiate a Remedial Investigation and Feasibility Study under section 104 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 [42 U.S.C.A. § 9604] and is diligently proceeding with a remedial action under that Act [42 U.S.C.A. § 9601 et seq.].

Ashland argues that subpart (iii) applies in this case because the consent order entered into between Ohio and the defendants provides in section 8 that an investigation in accordance with CERCLA requirements for remedial investigation and feasibility study

2. Section 6972 of Title 42 deals with citizen suits. Count 3 is brought under 42 U.S.C. § 6972(a)(1)(A) regarding violations of RCRA and count 4 is brought under 42 U.S.C. § 6972(a)(1)(B) regarding substantial endangerment to health or the environment. Subsection (b) provides when citizen suits are prohibited. Ashland argues that count 3 is prohibited by subsection (b)(1)(B) which prohibits a suit under subsection (a)(1)(A) if the state "has commenced and is diligently prosecuting a civil or criminal action" and count 4 is prohibited by subsection (b)(2)(C)(iii) which prohibits a suit under subsection (a)(1)(B) when the state has incurred costs and is diligently proceeding with remedial action—an argument which will be discussed in detail in this section. A similar parallel exists in the notice arguments raised in regard to counts 3 and 4 discussed in the following section.

will be performed and includes interim remedial measures and because the state has incurred and will continue to incur related costs. The consent order filed in the Court of Common Pleas of Licking County does provide that such an investigation shall be conducted. Heath argues that a factual question remains regarding whether the state is "diligently proceeding with a remedial action under the Act."

Ashland cites to various cases for the proposition that courts routinely dismiss suits under subpart (B) and argues in fact this case is identical to *Carroll v. Litton Systems, Inc.*, 1990 WL 312969, 1990 U.S.Dist. LEXIS 16833 (W.D. N.C. Oct. 29, 1990). *Carroll* dealt with an administrative consent order which the court found to be equivalent to judicial action since it was expressly enforceable in federal court. 1990 WL 312969 * 66, 1990 U.S.Dist. LEXIS 16833 * 197. Further, Ashland argues that dismissal of count 4 will implement RCRA's objective of preventing duplicative and conflicting obligations.

From an examination of the consent order filed in the Court of Common Pleas of Licking County, the consent order requires a remedial investigation and feasibility study, sets forth time limits and requires monthly reports, and is binding on the parties. As explained in regard to count 3, the diligence of the state's remedial action is established by the detailed consent order entered by the court. Accordingly, count 4 is barred by 42 U.S.C. § 6972(b)(2)(C) and must be dismissed. However, the Court will proceed to consider the notice argument.

### 2. *Notice Requirement*

■ Ashland argues that in a citizen suit subject matter jurisdiction depends on proper pre-litigation notice pursuant to 42 U.S.C. § 6972(b)(2)(A). Ashland argues that Heath is required to comply with the ninety day notice requirement and its failure to do so deprives the Court of jurisdiction. Heath responds that its claim falls within the exception clause in 42 U.S.C. § 6972(b)(2)(A) allowing a suit to be filed immediately after notification and that Heath provided sixty-

nine days notice which was more than adequate.

■ The Sixth Circuit, relying on *Middlesex County Sewerage Association v. Nat. Sea Clammers Asso.*, 453 U.S. 1, 18, 101 S.Ct. 2615, 2625, 69 L.Ed.2d 435 (1981), has held that compliance with the citizen suit notice requirement "is a jurisdictional prerequisite to bringing a citizen suit and must be sufficiently alleged." *Walls*, 761 F.2d at 316–17. In its amended complaint, Heath alleges at paragraph 21 that "Plaintiff has given notice to Defendants of the violations herein and failure to perform acts, pursuant to RCRA § 7002(b), 42 U.S.C. § 6972(b)." Plaintiff then attached copies of the notice letters to the complaint, these letters being dated July 28, 1992. The original complaint was filed November 14, 1991 and the amended complaint was filed October 5, 1992. Count 4 was first asserted in the amended complaint. Ashland argues that pursuant to Rule 15(c), the relation back doctrine applies and Heath did not give notice until after the original suit was filed. Alternatively Ashland argues that even using the amended complaint date only sixty-nine days, rather than the ninety days required, passed between notice and the date the amended complaint was filed. Heath responds that sixty-nine days is more than adequate notice as 42 U.S.C. § 6972(b)(2)(A) authorizes actions immediately after notification for violations of subchapter III. Further, Heath argues the relation back doctrine of Rule 15(c) is not applicable in this situation.

■ The relation back doctrine is generally only applied with reference to the statute of limitations and generally not applied to make a claim premature. 3 James Moore, et al., *Moore's Federal Practice*, ¶ 15.15[5] (1992). However, in the context of RCRA some courts have required a non-adversarial notice period and, therefore, used the date of the filing of the original action. *Garcia v. Cecos Intern., Inc.*, 761 F.2d 76, 82 (1st Cir. 1985); (superseded by statute as stated in *Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 805 F.2d 1074 (1st Cir.1986)); *Supporters To Oppose Pollution v. Heritage Group*, 760 F.Supp. 1338, 1342 (N.D.Ind. 1991). Courts requiring a non-adversarial

notice period seek to further the purpose of the notice provision and to encourage resolution of disputes outside courts. *Garcia,* 761 F.2d at 82. However, in a case in which the claims requiring notice were first asserted in the amended complaint, the court held the date of the amended complaint controlled for measuring the notice period. *Zands v. Nelson,* 779 F.Supp. 1254, 1259 (S.D.Cal.1991). In *Zands* the court considered the purpose of the notice provision but concluded that requiring non-adversarial notice would impede plaintiff's ability to bring new claims, therefore, the court declined to impose a non-adversarial notice requirement not explicit in the statute. *Id.* at 1261.

In this case plaintiff's original complaint contained CERCLA claims, but claims under RCRA were first asserted in the amended complaint. This Court will follow the reasoning of the court in *Zands* and use the date of the amended complaint. Therefore, Heath has adequately alleged sixty-nine days notice. The question remaining is what is the required notice provision.

Title 42 section 6972(b)(2)(A) provides:

**(b) Actions prohibited**

(2)(A) No action may be commenced under subsection (a)(1)(B) of this section prior to ninety days after the plaintiff has given notice of the endangerment to—

(i) the Administrator;

(ii) the State in which the alleged endangerment may occur;

(iii) any person alleged to have contributed or to be contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste referred to in subsection (a)(1)(B) of this section,

except that such action may be brought immediately after such notification in the case of an action under this section respecting a violation of subchapter III of this chapter.

Under this section ninety days notice is required unless the action regards a violation of subchapter III. In the complaint Heath alleges violations of 42 U.S.C. §§ 6922, 6924, 6925, the same sections referenced in count 3. These sections are all contained with subchapter III—Hazardous Waste Management. Therefore, it would initially appear the exception clause applies. However, Ashland argues that the subchapter III exception is inapplicable because the Ohio hazardous waste program operates in lieu of the provisions in subchapter III, the same argument advanced in regard to count 3.

Count 3 has been dismissed due in part to Heath's failure to allege a violation of a provision of federal law applicable in Ohio. This same rational results in the exception clause being inapplicable since Heath has not alleged a violation of subchapter III. Therefore the ninety day notice period applies.

Although the complaint alleges general compliance with the notice requirements, the attached letter referenced by the allegation indicates a notice date of July 28, 1992 and the amended complaint was filed October 5, 1992—a period of less than ninety days. Under *Walls,* failure to sufficiently set forth the jurisdictional predicate of sufficient notice deprives the Court of jurisdiction over the claim. Accordingly, count 4 must be dismissed for failure to allege sufficient notice.

### 3. Civil Penalties

Ashland argues that Heath's demand for civil penalties under count 4 is inappropriate because civil penalties are only available for a violation of subchapter III pursuant to 42 U.S.C. § 6928(g). As argued previously by Ashland, Heath has not been able to identify any provision of subchapter III still applicable in Ohio which it has alleged to be violated. Therefore, Ashland argues that to the extent Heath seeks civil penalties, count 4 should be dismissed.

The Court need not address this argument, based on its prior findings. However, the Court has previously determined that count 4 is not based on violations of subchapter III. Therefore, pursuant to 42 U.S.C. § 6928(g), civil penalties would not be available. The Court notes that both parties agree that to the extent civil penalties are available, they are payable to the federal treasury.

## CONCLUSION

The motions to file a surreply, a reply to the surreply, and additional authority are **GRANTED.**

For the reasons stated, the motion to dismiss counts 2, 3 and 4 is **GRANTED.**

**IT IS SO ORDERED.**